**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | : CHAPTER 11 |
| | : |
| LOWER BUCKS HOSPITAL | : Bky. No. 10-10239 ELF |
| | : |
| LOWER BUCKS HEALTH ENTERPRISES, INC. | : JOINTLY ADMINISTERED |
| | : |
| ADVANCED PRIMARY CARE PHYSICIANS | : |
| | : |
| Debtors.[1] | : |

**MOTION OF DEBTORS FOR AN ORDER PURSUANT TO
11 U.S.C. § 1121(d) FURTHER EXTENDING THE EXCLUSIVE
PERIODS DURING WHICH DEBTORS MAY FILE A CHAPTER 11
PLAN AND SOLICIT ACCEPTANCES THERETO**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") for entry of an order: (a) further extending the period in which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by 90 days, through and including January 9, 2011; and (b) further extending the period in which the Debtors have the exclusive right to solicit acceptances of the chapter 11 plan (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") by 90 days, through and including March 10, 2011. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification number are as follows: Lower Bucks Hospital (9667); Lower Bucks Health Enterprises, Inc. (7355); and Advanced Primary Care Physicians (9053). The Debtors' address is 501 Bath Road, Bristol, Pennsylvania 19007.

1262428.2 9/14/10

**Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a) and 1121(d) of the Bankruptcy Code.

**Background**

4. On January 13, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code thereby commencing these chapter 11 cases. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Lower Bucks Hospital ("LBH") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania. Together with its affiliated Debtors, it owns and operates a 183 bed acute care hospital and related ambulatory surgical center and other facilities located on a 36-acre medical campus in Bristol, Pennsylvania (collectively, the "Hospital"). The Hospital provides a full range of acute, sub-acute ambulatory and related services including cardiac catheterization, open heart surgery, ambulatory surgical services, diagnostic imaging (including MRI), industrial health, maternity, home health and orthopedics. The Hospital employs approximately 994 full and part-time employees, including approximately 11 physicians.

6. No trustee or examiner has been appointed in these chapter 11 cases. On January 22, 2010, the Office of the United States Trustee for the Eastern District of Pennsylvania

appointed the Official Committee of Unsecured Creditors of Lower Bucks Hospital, *et al.* (the "Committee").

7. On February 18, 2010, the Debtors filed their Schedules of Assets and Liabilities as well as their Statement of Financial Affairs.

8. Pursuant to the *Order Pursuant to 11 U.S.C. § 1121(d) Extending the Exclusive Periods During Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereto* [D.I. 579], the Debtors' current Exclusive Filing Period is scheduled to expire on October 11, 2010 and the Debtors' current Exclusive Solicitation Period is scheduled to expire on December 9, 2010.

### Relief Requested

9. By this Motion, the Debtors seek the entry of an Order, pursuant to sections 105(a) and 1121(d) of the Bankruptcy Code: (a) further extending the Debtors' Exclusive Filing Period by 90 days, through and including January 9, 2011; and (b) further extending the Debtors' Exclusive Solicitation Period by 90 days, through and including March 10, 2011.

10. The Debtors request the extension of their Exclusive Periods without prejudice to the Debtors' rights to seek additional extensions of the Exclusive Periods for cause shown.

### Basis for Relief

11. Section 1121(b) of the Bankruptcy Code provides that "only a debtor may file a plan until after 120 days after the date of the order for relief under this chapter." 11 U.S.C. § 1121(b). Sections 1121(c)(2) and (3) provide, in relevant part, that a party in interest may file a plan if and only if "the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter" or "the debtor has not filed a plan that has been accepted before 180 days after the date of the order for relief." 11 U.S.C. § 1121(c)(2)-(3).

12. In turn, section 1121(d)(1) provides, in relevant part:

> [O]n request of a party in interest made within the respective periods in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

13. Pursuant to section 1121(d)(2), however, the 120-day Exclusive Filing Period may not be extended beyond a date that is 18 months after the Petition Date and the 180-day Exclusive Solicitation Period may not be extended beyond a date that is 20 months after the Petition Date. 11 U.S.C. § 1121(d)(2).

### I. A Court May Extend the Exclusive Periods for Cause under Section 1121(d) of the Bankruptcy Code

14. Section 1121(d)(1) allows a court to extend the Exclusive Periods for "cause" shown. 11 U.S.C. § 1121(d); In re Pine Run Trust, Inc., 67 B.R. 432, 433 (Bankr. E.D. Pa. 1986). The term "cause," however is not defined in the Bankruptcy Code and bankruptcy courts have broad discretion to determine "cause" based on the facts and circumstances of each case. In re Lehigh Valley Professional Sports Club, Inc., No. 00-11296, 2000 WL 290187, at *2 (Bankr. E.D. Pa. March 14, 2000); In re Burns and Roe Enters., Inc., No 00-41610 (RG), 2005 WL 6289213, at *3-*4 (D.N.J. Nov. 2, 2005); In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Sharon Steel Corp., 78 B.R. 762, 763-65 (Bankr. W.D. Pa. 1987).

15. Legislative history also makes clear that the term "cause" is intended to be a flexible standard aimed at balancing the competing interests of a debtor and its creditors. See H.R. Rep. No. 95-595 at 231-32 (1978). The purpose of exclusivity is to "promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be

negotiated." See H.R. Rep. No. 95-595, at 36 (1994); Burns, 2005 WL 6289213, at *4. Accordingly, to fulfill Congress' legislative intent, debtors should be granted a reasonable opportunity to remain in control for a period of time to prepare adequate financial and non-financial information regarding the outcome of any proposed plan for disclosure to creditors. See In re Mclean Indus., Inc., 87 B.R. 830, 833-34 (Bankr. S.D.N.Y. 1987).

16. To determine whether cause exists to extend the Exclusive Periods, courts consider several non-exclusive factors, including:

(a) the size and complexity of the case;

(b) the debtors' need for sufficient time to negotiate a plan of reorganization and prepare adequate information;

(c) the existence of good faith progress toward reorganization;

(d) whether the debtor is paying its bills as they come due;

(e) whether the debtor has shown a reasonable likelihood of proposing a viable plan of reorganization;

(f) the progress the debtor has made in negotiating with its creditors;

(g) the amount of time that has elapsed in the case;

(h) whether the debtor is seeking an extension of the exclusive periods to pressure creditors to submit to the debtors' reorganization demands; and

(i) whether any unresolved contingencies exist.

In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); In re Adelphia Comm. Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); Gibson, 101 B.R. at 409-10. No single factor is dispositive in determining whether to extend exclusivity; courts can choose to rely on only a few factors or

even altogether differing factors. In re The Elder-Beerman Stores Corp., No. C-3-97-175, 1997 WL 1774880, at *4 (S.D. Ohio June 23, 1997); Dow Corning, 208 B.R. at 669-70. The primary consideration, however, should be whether granting an extension of the Exclusive Periods would help progress the Debtors' chapter 11 cases. Dow Corning, 208 B.R. at 670; In re Henry Mayo Newhall Memorial Hospital, 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002).

17. Consistent with this flexible standard, courts in this Circuit have routinely granted extensions similar to those requested by the Motion in large chapter 11 cases to provide debtors with a sufficient opportunity to formulate a workable plan of reorganization. See, e.g., In re Philadelphia Newspapers, LLC, Case No. 09-11204 (SR) (Bankr. E.D. Pa. October 15, 2009) (granting an initial extension of exclusive period of 60 days and granting an additional extension of 60 days); TH Properties, L.P., Case No. 09-13201 (SR) (Bankr. E.D. Pa. Sept. 21, 2009) (granting a third 90-day extension of exclusive periods); In re Aleris Int'l Inc., Case No. 09-10478 (BLS) (Bankr. D. Del. May 19, 2009) (granting an initial extension of exclusive periods of 180 days); In re Cadence Innovation LLC, Case No. 08-11974 (KG) (Bankr. D. Del. Jan. 16, 2009) (granting an initial extension of exclusive periods of 120 days, granting an additional extension of 90 days and considering a third extension of 90 days); In re Boscov's, Inc., Case No. 08-11637 (KG) (Bankr. D. Del. Dec. 16, 2008) (granting an initial extension of exclusive periods of approximately four months and a total extension of approximately eight months), In re SemCrude, L.P., Case No. 09-11525 (BLS) (Bankr. D. Del. Dec. 8, 2008) (granting an initial extension of exclusive periods of approximately four months and an additional extension of approximately three months).

## II. Cause Exists to Extend the Exclusive Periods

18. The Debtors respectfully submit that the size and complexity of their cases, together with the progress made to date, provide sufficient cause for a 90-day extension of their Exclusive Periods.

19. By any measure, the Debtors' cases qualify as "large and complex." As of the Petition Date, the Debtors employed nearly 1,000 full and part-time employees, as well as numerous independent contractors. As of February 28, 2010, the Debtors' books and records reflected significant assets and liabilities. In addition to their size, the Debtors' cases are complex and include, among other things, union issues, regulatory issues, pension issues, vendor disputes and, as described in more detail below, avoidance and perfection issues related to certain bonds.

20. Despite these complexities, the Debtors have made substantial progress since filing for bankruptcy. Initially, the Debtors' management has focused on stabilizing, and improving, the Debtors' business operations and cash flow and attending to the many time-consuming demands that accompany commencement of chapter 11 cases. Among other things, the Debtors have:

(a) strengthened their management team by adding a Controller, Purchasing Director, Business Office Director and Case Management Director;

(b) implemented improved controls for the Debtors' purchasing system, to enable the Debtors to take advantage of better pricing and enhanced rebates;

(c) centralized the Debtors' purchasing function and supply chain, which has improved the Debtors' ability to more effectively and efficiently purchase goods and services;

(d) increased up-front cash co-pay collections by 80-90% through process improvements during admissions;

(e) expanded LBH's wound care services from two to five days per week, which should result in a significant increase in wound care patient volume;

(f) increased capital expenditures and facility maintenance to address past deferrals;

(g) tightened expense controls while avoiding any material post-petition interruption of supplies or materials;

(h) increased marketing and advertising efforts in the Bristol region through billboards and other means; and

(i) increased outreach efforts to local physicians.

21. These actions, among others, have significantly improved the Debtors' cash position, which has risen from approximately $4.5 million on the Petition Date to approximately $9.0 million as of September 10, 2010. Significantly, the Debtors' EBITDA has been positive, on an overall basis, since February 2010, and has markedly improved over last year's results.

22. The Debtors and their professionals also have devoted a substantial amount of time and effort in connection with LBH's litigation against the indenture trustee (the "Indenture Trustee") for the Borough of Langhorne Manor Higher Education and Health Authority Hospital Revenue Bonds, Series of 1992 (the Lower Bucks Hospital) (the "Bonds"). As the Court is aware, this litigation has required extensive briefing and oral argument, as well as the preparation and filing of an amended complaint. For obvious reasons, the outcome of this litigation – which addresses, among other things, whether or not the Indenture Trustee holds perfected, non-avoidable liens on certain LBH assets – will have a substantial impact on the Debtors' bankruptcy cases.

23. Also, the Debtors have expended a significant amount of time and effort resolving issues related to LBH's business relationship with HyperOx I LP and its affiliates (collectively, "HyperOx"). As the Court is aware, the Debtors and HyperOx were engaged in difficult, and at

times acrimonious, litigation commencing in early March 2010. This litigation required the Debtors and the Debtors' professionals to expend substantial time and energy drafting and responding to discovery requests, preparing for depositions and, ultimately, negotiating a settlement agreement resolving all of the pending HyperOx issues. While the HyperOx issues were resolved by Court Order entered June 30, 2010, they have been a significant distraction in these cases.

24. Despite the need to address these issues, the Debtors and their professionals have devoted a substantial amount of time pursuing alternative reorganization strategies. As previously represented to the Court, the Debtors are considering two basic options for their reorganization – a sale of substantially all of the Debtors' assets and a stand-alone plan of reorganization – to determine which alternative will provide the greatest benefit. The Debtors have engaged in discussions with several potential buyers of the Debtors' assets and have kept the Committee fully apprised of such discussions, including without limitation the Debtors' evaluation of the strengths, weaknesses and viability of potential offers/offerors. The Debtors, with the assistance of their investment bankers, are in the process of contacting known potential purchasers to inform them of the Debtors' improved operations and solicit further expressions of interest.

25. Simultaneously, the Debtors continue to consider their stand-alone business alternatives. In connection with a potential stand-alone plan, the Debtors have worked diligently to develop a business plan, which has been shared with the Committee, and are in the process of assessing funding sources under potential restructuring scenarios. These funding sources may include, among other things, a monetization of certain grants payable to the Debtors pursuant to the recent table-gaming legislation enacted in Pennsylvania, under which the Debtors are entitled

to 50% of Bucks County's local share assessment received from table gaming at a local gaming facility. The Debtors are currently engaged in negotiations concerning the structure that would support this monetization. It would be premature for the Debtors to propose a plan of reorganization within the current exclusivity periods without the benefit of a complete analysis of both options, to determine which alternative will provide the greatest benefit to creditors and parties-in-interest.

26. The Debtors have met with the Indenture Trustee to discuss the Debtors' progress in these cases and their prospects for reorganization and/or sale. The Debtors also have met with certain key holders of Bonds, subject to confidentiality, regarding these issues. The Debtors intend to continue their discussions with the Indenture Trustee and key holders of the Bonds.

27. A critical component of formulating a plan of reorganization is analyzing and processing the claims that have been asserted against the Debtors' estates. These claims are considerable. In response to the August 20, 2010 bar date in these cases, almost $600 million of claims were filed in these cases. Although the Debtors believe that certain of these claims are grossly overstated, significant effort is required to review these claims in detail and, where appropriate, file objections. Clearly, the Debtors need sufficient time to ascertain the full nature, extent and scope of the claims asserted against them prior to filing a plan of reorganization.

28. Only eight months have elapsed since the Petition Date. During the time since the Petition Date, the Debtors have accomplished a great deal. As explained above, the Debtors and their professionals have undertaken substantial efforts to administer these cases as efficiently as possible. There can be no doubt that the Debtors have acted diligently since filing for bankruptcy.

29. The Debtors have sufficient liquidity and are paying their bills as they become due in the ordinary course of business. Through prudent business decisions and cash management, the Debtors have sufficient resources to meet their required post-petition payment obligations, and are managing their businesses effectively and preserving the value of their assets for the benefit of creditors. Accordingly, the Debtors do not believe any party would be prejudiced by the requested extension of the Debtors' Exclusive Periods. In contrast, the Debtors fear that expiration of exclusivity at this juncture would cause significant loss of value for the Debtors' estates by, among other things, jeopardizing the Debtors' efforts to stabilize their businesses and operations. The Debtors also are concerned that an expiration of exclusivity likely would compel the Debtors to address one or more impractical and/or unworkable plans proposed by actual or alleged parties-in-interest, at significant cost to the estates and to the overall detriment of all parties-in-interest.

30. The Debtors respectfully submit that, under all of the relevant facts and circumstances, the requested extension of the Debtors' Exclusive Periods will not prejudice the legitimate interests of any creditor and will afford the Debtors the opportunity to propose a confirmable plan of reorganization.

### Notice

31. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) the Office of the United States Attorney for the Eastern District of Pennsylvania; (c) the Office of the Attorney General for the Commonwealth of Pennsylvania; (d) the Commonwealth of Pennsylvania Department of Labor and Industry; (e) the Commonwealth of Pennsylvania Department of Revenue; (f) counsel to the Committee; (g) counsel to Bank of New York Mellon Trust Company, N.A., indenture trustee

for the Borough of Langhorne Manor Higher Education and Health Authority Hospital Revenue Bonds, Series of 1992 (The Lower Bucks Hospital); (h) the Internal Revenue Service; (i) counsel to the International Union of Operating Engineers, Local 835 AFL-CIO; (j) counsel to the Pennsylvania Association of Staff Nurses & Allied Professionals; (k) the Pension Benefit Guaranty Corporation; and (l) any party that has filed an entry of appearance in these cases. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

No prior application for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto (a) extending the Exclusive Filing Period by 90 days, through and including January 9, 2011; (b) extending the Exclusive Solicitation Period by 90 days, through and including March 10, 2011; and (c) granting such other or further relief as the Court deems just and proper.

Dated: September 14, 2010
Philadelphia, Pennsylvania

**SAUL EWING LLP**

By:  /s/ Jeffrey C. Hampton
Jeffrey C. Hampton, Esq.
Adam H. Isenberg, Esq.
Melissa W. Rand, Esq.
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7118/8662/1995
Facsimile: (215) 972-1848/1853/1872

*Counsel for the Debtors
and Debtors-in-Possession*