UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| LOWER BUCKS HOSPITAL | : | Bky. No. 10-10239 ELF |
| | : | |
| LOWER BUCKS HEALTH ENTERPRISES, INC. | : | JOINTLY ADMINISTERED |
| | : | |
| ADVANCED PRIMARY CARE PHYSICIANS | : | |
| | : | |
| Debtors.[1] | : | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
LOWER BUCKS HOSPITAL, LOWER BUCKS HEALTH
ENTERPRISES, INC. AND ADVANCED PRIMARY CARE PHYSICIANS**

Dated: July 8, 2011

SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7777

Attorneys for the Debtors and
Debtors-in-Possession

---

[1]    The Debtors and the last four digits of their respective taxpayer identification number are as follows: Lower Bucks Hospital (9667); Lower Bucks Health Enterprises, Inc. (7355); and Advanced Primary Care Physicians (9053). The Debtors' address is 501 Bath Road, Bristol, Pennsylvania 19007.

## TABLE OF CONTENTS

Page

ARTICLE 1. DEFINITIONS ................................................................................. 1
   1.1.   "2011 Bonds" ........................................................................................... 1
   1.2.   "2011 Debt Service Reserve Fund" ........................................................ 1
   1.3.   "Administrative Expense Claim" ............................................................ 1
   1.4.   "Allowed" ................................................................................................ 1
   1.5.   "APC" ...................................................................................................... 1
   1.6.   "Assets" ................................................................................................... 1
   1.7.   "Avoidance Actions" .............................................................................. 1
   1.8.   "Ballot" ................................................................................................... 1
   1.9.   "Balloting Agent" ................................................................................... 1
   1.10.  "Bankruptcy Code" ................................................................................ 1
   1.11.  "Bankruptcy Court" ............................................................................... 2
   1.12.  "Bankruptcy Rules" ............................................................................... 2
   1.13.  "Bar Date" or "Section 503(b)(9) Bar Date" ........................................ 2
   1.14.  "Bonds" ................................................................................................... 2
   1.15.  "Bond Trustee" ....................................................................................... 2
   1.16.  "Bond Trustee Claim" ............................................................................ 2
   1.17.  "Bond Trustee Litigation" ..................................................................... 2
   1.18.  "Bond Trustee Secured Claim" .............................................................. 2
   1.19.  "Bond Trustee Settlement Agreement" ................................................. 2
   1.20.  "Bond Trustee Unsecured Claim" ......................................................... 2
   1.21.  "Bristol Township Secured Claim" ....................................................... 2
   1.22.  "Business Day" ....................................................................................... 2
   1.23.  "Cash" ...................................................................................................... 2
   1.24.  "Causes of Action" ................................................................................ 3
   1.25.  "Chapter 11 Cases" ................................................................................ 3
   1.26.  "Claim" .................................................................................................... 3
   1.27.  "Claims Agent" ...................................................................................... 3
   1.28.  "Committee" ........................................................................................... 3
   1.29.  "Confirmation Date" .............................................................................. 3
   1.30.  "Confirmation Hearing" ........................................................................ 3
   1.31.  "Confirmation Order" ............................................................................ 3
   1.32.  "Contested Claim" ................................................................................. 3
   1.33.  "Contested Claims Reserve" ................................................................. 3
   1.34.  "Convenience Claim" ............................................................................ 3
   1.35.  "Convenience Class Election" ............................................................... 4
   1.36.  "Creditor Note" ...................................................................................... 4
   1.37.  "Cure Cost" ............................................................................................ 4
   1.38.  "Debtor" .................................................................................................. 4
   1.39.  "Debtor-in-Possession" ......................................................................... 4
   1.40.  "Determined Value" ............................................................................... 4
   1.41.  "Disallowed" .......................................................................................... 4
   1.42.  "Disbursing Agent" ............................................................................... 4

| | | |
|---|---|---|
| 1.43. | "Disclosure Statement" | 4 |
| 1.44. | "Distribution Date" | 4 |
| 1.45. | "Distribution Record Date" | 4 |
| 1.46. | "Effective Date" | 4 |
| 1.47. | "Encumbrance" | 4 |
| 1.48. | "Enterprises" | 5 |
| 1.49. | "Entity" | 5 |
| 1.50. | "Estate" | 5 |
| 1.51. | "Estimation Order" | 5 |
| 1.52. | "Fee Application" | 5 |
| 1.53. | "Fee Claim" | 5 |
| 1.54. | "Final Order" | 5 |
| 1.55. | "General Unsecured Claim" | 5 |
| 1.56. | "Hospital Facility" | 5 |
| 1.57. | "Hospital Facility Lease" | 5 |
| 1.58. | "Indenture" | 6 |
| 1.59. | "Initial Distribution Date" | 6 |
| 1.60. | "Internal Revenue Code" | 6 |
| 1.61. | "IRS" | 6 |
| 1.62. | "LBH" | 6 |
| 1.63. | "Guaranteed Cash" | 6 |
| 1.64. | "Malpractice Insurance Coverage" | 6 |
| 1.65. | "Medical Malpractice Claim" | 6 |
| 1.66. | "Non-Stipulated Medical Malpractice Claim" | 6 |
| 1.67. | "Non-Stipulated Medical Malpractice Claims Procedures" | 6 |
| 1.68. | "Notice of Effective Date" | 6 |
| 1.69. | "Objection Deadline" | 6 |
| 1.70. | "Other Secured Claim" | 6 |
| 1.71. | "PBGC" | 6 |
| 1.72. | "PBGC General Unsecured Claim" | 6 |
| 1.73. | "PBGC Stipulation" | 7 |
| 1.74. | "Pension Plan" | 7 |
| 1.75. | "Person" | 7 |
| 1.76. | "Petition Date" | 7 |
| 1.77. | "Plan" | 7 |
| 1.78. | "Plan Distribution" | 7 |
| 1.79. | "Plan Documents" | 7 |
| 1.80. | "Plan Supplement" | 7 |
| 1.81. | "Priority Non-Tax Claim" | 7 |
| 1.82. | "Priority Tax Claim" | 7 |
| 1.83. | "Pro Rata Share" | 7 |
| 1.84. | "Professional" | 7 |
| 1.85. | "RDA" | 7 |
| 1.86. | "Rejection Damage Claim" | 8 |
| 1.87. | "Reorganized Lower Bucks Hospital" | 8 |
| 1.88. | "Reorganized Debtors" | 8 |

**1.89.** "Reserve Funds" ................................................................ 8
**1.90.** "Schedules" ........................................................................ 8
**1.91.** "Section 503(b)(9) Claim" .................................................. 8
**1.92.** "Secured Claim" .................................................................. 8
**1.93.** "Stipulated Medical Malpractice Claim" ........................... 8
**1.94.** "Stipulated Medical Malpractice Claim Election" ............ 8
**1.95.** "Table Gaming Grants" ....................................................... 8
**1.96.** "Termination Premiums" .................................................... 8
**1.97.** "Uninsured Deficiency" ...................................................... 8
ARTICLE 2. INTERPRETATION AND APPLICATION ........................ 9
   **2.1.** Interpretation. ..................................................................... 9
   **2.2.** Application of Definitions and Rules of Construction Contained in the
Bankruptcy Code. .............................................................................. 9
   **2.3.** Other Terms. ....................................................................... 9
   **2.4.** Incorporation of Plan Documents. ..................................... 9
ARTICLE 3. CLASSIFICATION OF CLAIMS ...................................... 10
   **3.1.** Administrative Expense Claims and Priority Tax Claims........ 10
   **3.2.** Claims Against LBH. .......................................................... 10
   **3.3.** Claims Against Enterprises. ............................................... 11
   **3.4.** Claims Against APC. .......................................................... 11
ARTICLE 4. IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES OF
CLAIMS ................................................................................................ 12
   **4.1.** Impaired and Unimpaired Classes of Claims. ................... 12
   **4.2.** Impairment Controversies. ................................................ 12
ARTICLE 5. PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN........... 12
   **5.1.** Treatment of Claims Against LBH: .................................... 12
   **5.2.** Treatment of Claims Against Enterprises: ......................... 17
   **5.3.** Treatment of Claims Against APC: .................................... 18
ARTICLE 6. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE
PLAN ................................................................................................... 20
   **6.1.** Unclassified Claims. .......................................................... 20
   **6.2.** Treatment of Administrative Expense Claims..................... 20
   **6.3.** Treatment of Priority Tax Claims. ..................................... 22
ARTICLE 7. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY
ONE OR MORE CLASSES OF CLAIMS................................................ 22
   **7.1.** Classes Entitled to Vote. .................................................... 22
   **7.2.** Class Acceptance Requirement. ......................................... 22
   **7.3.** Tabulation of Votes on a Non-Consolidated Basis. ........... 22
   **7.4.** Cramdown. ......................................................................... 23
   **7.5.** Confirmation of All Cases. ................................................ 23
ARTICLE 8. MEANS FOR IMPLEMENTATION OF THE PLAN ......... 23
   **8.1.** Effective Date and Initial Distribution Date Payments. ..... 23
   **8.2.** [intentionally omitted] ....................................................... 24
   **8.3.** Operations Between the Confirmation Date and the Effective Date.......... 24
   **8.4.** Corporate Action. ............................................................... 24
   **8.5.** Continued Corporate Existence. ......................................... 25

**8.6.**    Re-vesting of Assets. ................................................................ 25
**8.7.**    Post-Confirmation Management. ............................................... 26
**8.8.**    Limited Retention of Avoidance Actions. ................................. 26
ARTICLE 9. THE DISBURSING AGENT ........................................................ 26
**9.1.**    Appointment of the Disbursing Agent. ..................................... 26
**9.2.**    Powers and Duties. ................................................................... 26
**9.3.**    Exculpation. .............................................................................. 27
ARTICLE 10. DISTRIBUTION PROVISIONS ................................................ 27
**10.1.**    Sources of Cash for Plan Distributions. ................................... 27
**10.2.**    Investment of Funds Held by the Disbursing Agent; Tax Reporting by the
Disbursing Agent. ................................................................................ 27
**10.3.**    Plan Distributions. ................................................................... 28
**10.4.**    Timing of Plan Distributions. .................................................. 28
**10.5.**    Address for Delivery of Plan Distributions/Unclaimed Distributions .............. 28
**10.6.**    Time Bar to Cash Payments. .................................................... 29
**10.7.**    Manner of Payment under the Plan. ......................................... 29
**10.8.**    Fractional Plan Distributions. .................................................. 29
**10.9.**    Surrender and Cancellation of Instruments. ............................. 29
**10.10.**  Record Date for Distributions. ................................................. 30
**10.11.**  Subsequent Distributions. ........................................................ 30
**10.12.**  De Minimus Distributions. ....................................................... 30
ARTICLE 11. PROCEDURES FOR RESOLVING AND TREATING CONTESTED
CLAIMS ....................................................................................................... 30
**11.1.**    Prosecution of Contested Claims. ............................................ 30
**11.2.**    Objection Deadline. .................................................................. 30
**11.3.**    Claims Settlement. .................................................................... 31
**11.4.**    No Distribution Pending Allowance ......................................... 31
**11.5.**    Entitlement to Plan Distributions Upon Allowance. ................ 31
**11.6.**    Contested Claims Reserve. ....................................................... 31
**11.7.**    Estimation of Claims. ............................................................... 31
**11.8.**    No Recourse Against the Debtors, the Reorganized Debtors or Disbursing
Agent .................................................................................................... 32
ARTICLE 12. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ........................................................................................................ 32
**12.1.**    Assumption and Rejection of Executory Contracts and Unexpired Leases. ...... 32
**12.2.**    Cure. ......................................................................................... 33
**12.3.**    Claims Arising from Rejected Contracts. ................................. 34
ARTICLE 13. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE
OCCURRENCE OF THE EFFECTIVE DATE ................................................. 34
**13.1.**    Conditions Precedent to Confirmation. .................................... 34
**13.2.**    Conditions Precedent to the Occurrence of the Effective Date. ......... 34
**13.3.**    Effect of Non-Occurrence of the Effective Date. .................... 35
ARTICLE 14. RETENTION OF JURISDICTION ............................................ 35
ARTICLE 15. MISCELLANEOUS PROVISIONS ........................................... 37
**15.1.**    Subordination. .......................................................................... 37
**15.2.**    Payment of Statutory Fees. ...................................................... 37

iv

**15.3.**   Satisfaction of Claims..............................................................................37
**15.4.**   Exculpation................................................................................................38
**15.5.**   Discharge of Liabilities. ..........................................................................38
**15.6.**   Discharge of Debtors. ..............................................................................39
**15.7.**   PBGC Stipulation .....................................................................................39
**15.8.**   Notices. .....................................................................................................39
**15.9.**   Headings. ...................................................................................................40
**15.10.**  Governing Law. .........................................................................................40
**15.11.**  Exemption from Transfer Taxes. .............................................................40
**15.12.**  Notice of Entry of Confirmation Order and Relevant Dates. ...............41
**15.13.**  Interest and Attorneys' Fees. ...................................................................41
**15.14.**  Modification of the Plan. .........................................................................41
**15.15.**  Revocation of Plan....................................................................................41
**15.16.**  Setoff Rights. ............................................................................................42
**15.17.**  Compliance with Tax Requirements. .......................................................42
**15.18.**  Rates. ........................................................................................................42
**15.19.**  Injunctions. ...............................................................................................42
**15.20.**  Binding Effect...........................................................................................43
**15.21.**  Severability................................................................................................43
**15.22.**  Intercompany Claims................................................................................43
**15.23.**  No Admissions. .........................................................................................43
**15.24.**  Dissolution of the Committee...................................................................43
**15.25.**  Successors and Assigns. ...........................................................................44
**15.26.**  Corrective Action. ....................................................................................45

## ARTICLE 1.
DEFINITIONS

In the Plan, the following definitions apply:

**1.1.**   **"2011 Bonds"** shall have the meaning set forth in Section 8.1.1 of the Plan.

**1.2.**   **"2011 Debt Service Reserve Fund"** means the debt service reserve fund established under, and with respect to, the indenture relating to the 2011 Bonds.

**1.3.**   **"Administrative Expense Claim"** means any right to payment, whether secured or unsecured, constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code and any Allowed Claims under section 507(b) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors-in-possession, during the Chapter 11 Cases, including without limitation any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code.

**1.4.**   **"Allowed"** means, with respect to a Claim: (i) any Claim against any Debtor which is listed by such Debtor in the Schedules as liquidated in amount and not disputed and/or contingent and for which no contrary proof of claim has been filed; (ii) any Claim, proof of which was filed on or before the Bar Date, that is not a Contested Claim and as to which no objection to the allowance thereof has been interposed on or before the Initial Distribution Date; (iii) any Claim, proof of which was filed on or before the Bar Date, which is neither a Contested Claim nor a Disallowed Claim; or (iv) any Claim, proof of which was filed on or before the Bar Date, expressly allowed by a Final Order or by agreement in accordance with the provisions of the Plan.

**1.5.**   **"APC"** means Advanced Primary Care Physicians, one of the Debtors herein.

**1.6.**   **"Assets"** means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

**1.7.**   **"Avoidance Actions"** means all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code and any analogous Causes of Action arising under state law.

**1.8.**   **"Ballot"** means those certain ballots sent to holders of Claims for purposes of voting on the Plan.

**1.9.**   **"Balloting Agent"** means Donlin, Recano & Company, Inc.

**1.10.**   **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

**1.11.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Pennsylvania, or such other court having jurisdiction over the Chapter 11 Cases.

**1.12.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

**1.13.** **"Bar Date"** or **"Section 503(b)(9) Bar Date"** means August 20, 2010 at 4:00 p.m. Eastern Time, or such other supplemental deadline for the filing of proofs of claim as may be established pursuant to an order of the Bankruptcy Court.

**1.14.** **"Bonds"** means the Borough of Langhorne Manor Higher Education and Health Authority Hospital Revenue bonds, Series of 1992 (The Lower Bucks Hospital).

**1.15.** **"Bond Trustee"** means Bank of New York Mellon Trust Company, N.A., as Indenture Trustee for the Borough of Langhorne Manor Higher Education and Health Authority Hospital Revenue Bonds, Series of 1992 (The Lower Bucks Hospital).

**1.16.** **"Bond Trustee Claim"** means that certain proof of claim filed by the Bond Trustee, on behalf of the holders of the Bonds, on or about August 18, 2010, designated claim no. 377 by the Claims Agent, as such claim may from time to time be amended, supplemented and/or modified.

**1.17.** **"Bond Trustee Litigation"** means that certain adversary proceeding pending before the Bankruptcy Court as adversary proceeding no. 10-00174 (Lower Bucks Hospital, et al. vs. Bank of New York Mellon Trust Company, N.A., as Indenture Trustee for the Borough of Langhorne Manor Higher Education and Health Authority Hospital Revenue Bonds, Series of 1992 (The Lower Bucks Hospital)).

**1.18.** **"Bond Trustee Secured Claim"** means that portion, if any, of the Bond Trustee Claim that is a Secured Claim.

**1.19.** **"Bond Trustee Settlement Agreement"** means the agreement between and among the Debtors and the Bond Trustee regarding the settlement of the Bond Trustee Litigation.

**1.20.** **"Bond Trustee Unsecured Claim"** means that portion of the Bond Trustee Claim that is unsecured.

**1.21.** **"Bristol Township Secured Claim"** means that certain secured Claim filed by Bristol Township and designated claim no. 284 by the Claims Agent.

**1.22.** **"Business Day"** means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

**1.23.** **"Cash"** means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

1.24. **"Causes of Action"** means all claims, rights, actions, causes of action, liabilities. obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise, including without limitation any claims, causes of action, rights or remedies created by or arising under the Bankruptcy Code, including, without limitation, transfers avoidable and/or recoverable under sections 542, 544, 547, 548, 549 and 550 of the Bankruptcy Code on behalf of the Debtors and their Estates.

1.25. **"Chapter 11 Cases"** means the cases commenced under chapter 11 of the Bankruptcy Code and pending before the Bankruptcy Court with respect to each of the Debtors, styled as In re Lower Bucks Hospital, et al., Case No. 10-10239 ELF (Jointly Administered).

1.26. **"Claim"** means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.27. **"Claims Agent"** means Donlin, Recano & Company, Inc., the entity designated by order of the Bankruptcy Court to process proofs of claim.

1.28. **"Committee"** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

1.29. **"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the dockets of the Chapter 11 Cases.

1.30. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

1.31. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan.

1.32. **"Contested Claim"** means any Claim as to which the Debtors or Reorganized Debtors given notice to the holder thereof, on or prior to the Initial Distribution Date, that the Claim is under review for possible objection.

1.33. **"Contested Claims Reserve"** shall have the meaning ascribed to it in Section 11.5 of the Plan.

1.34. **"Convenience Claim"** means a General Unsecured Claim (a) in an Allowed amount equal to or less than $5,000.00, or (b) with respect to which the Person holding such Claim has made the Convenience Class Election.

3

**1.35.** **"Convenience Class Election"** means the election by a Person holding a General Unsecured Claim to reduce each of its Allowed General Unsecured Claims that exceed $5,000.00 to $5,000.00, and to thereby receive treatment in Class 9 – Convenience Claims in full satisfaction of its Allowed Claims. The Convenience Class Election shall be made by a properly completed and timely submitted Ballot indicating that the Convenience Class Election has been made.

**1.36.** **"Creditor Note"** shall mean a certain promissory note in substantially the form attached hereto as Exhibit "A".

**1.37.** **"Cure Cost"** means any amount payable by a Debtor pursuant to Section 12.2 and section 365(b)(1) of the Bankruptcy Code.

**1.38.** **"Debtor"** means, as applicable, Lower Bucks Hospital, Lower Bucks Health Enterprises, Inc. and Advanced Primary Care Physicians.

**1.39.** **"Debtor-in-Possession"** means any Debtor, in its capacity as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**1.40.** **"Determined Value"** shall have the meaning ascribed to it in Section 5.1.3(B)(iii)(3).

**1.41.** **"Disallowed"** when used with respect to a Claim, means the Claim, or such portion of the Claim, that has been disallowed by a Final Order.

**1.42.** **"Disbursing Agent"** means the Person identified as disbursing agent in the Confirmation Order.

**1.43.** **"Disclosure Statement"** means the Disclosure Statement filed with respect to the Plan, as it may be amended or modified from time to time.

**1.44.** **"Distribution Date"** means, with respect to any Allowed Claim either: (a) the Initial Distribution Date; and/or (b) the date on which a Subsequent Distribution is made, as defined in and subject to the provisions set forth in Section 10.11 herein.

**1.45.** **"Distribution Record Date"** shall mean the Confirmation Date or such other date as may be designated in the Confirmation Order.

**1.46.** **"Effective Date"** means a date selected by the Debtors, which must be a Business Day, that is no later than thirty (30) Business Days after all of the conditions specified in Section 13.2 have been satisfied or waived (to the extent subject to waiver).

**1.47.** **"Encumbrance"** means, with respect to any property, whether tangible or intangible, any mortgage, lien, pledge, charge, security interest, assignment, or encumbrance of any nature in respect of such property (including, without express or implied limitation, any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

4

**1.48.** **"Enterprises"** means Lower Bucks Health Enterprises, Inc., one of the Debtors herein.

**1.49.** **"Entity"** means any Person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.50.** **"Estate"** means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.51.** **"Estimation Order"** means an order or orders of the Bankruptcy Court (a) estimating or otherwise establishing the Allowed amounts of estimated Claims, and (b) entered by the Bankruptcy Court in connection with Section 11.7. The Estimation Order may be the Confirmation Order if the Confirmation Order grants the same relief that otherwise would have been granted in separate Estimation Order(s).

**1.52.** **"Fee Application"** means an application for allowance and payment of a Fee Claim.

**1.53.** **"Fee Claim"** means a Claim of a Professional.

**1.54.** **"Final Order"** means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is then pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

**1.55.** **"General Unsecured Claim"** means any unsecured Claim against a Debtor that is not an Administrative Expense Claim, a Section 503(b)(9) Claim, a Convenience Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a PBGC General Unsecured Claim, the Bond Trustee Unsecured Claim, a Medical Malpractice Claim or a Claim of a Debtor.

**1.56.** **"Hospital Facility"** means the real property underlying the hospital operated by LBH and having the following parcel numbers, and all improvements thereto: 04-004-002; 05-059-163; and 05-059-173.

**1.57.** **"Hospital Facility Lease"** shall having the meaning set forth in Section 8.1.1 of the Plan and shall be in substantial compliance with the form of Hospital Facility Lease to be submitted as part of the Plan Supplement.

**1.58.** **"Indenture"** means that certain Trust Indenture dated as of November 1, 1992 between Langhorne Manor Higher Education and Health Authority and Continental Bank as Trustee.

**1.59.** **"Initial Distribution Date"** shall mean the first Business Day that is at least ninety (90) days after the Effective Date.

**1.60.** **"Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

**1.61.** **"IRS"** means the United States Internal Revenue Service.

**1.62.** **"LBH"** means Lower Bucks Hospital, one of the Debtors herein.

**1.63.** **"Guaranteed Cash"** means $1,600,000 or, at LBH's option to be exercised on or before the Effective Date, $1,800,000.

**1.64.** **"Malpractice Insurance Coverage"** means the Debtors' available insurance coverage including primary and excess insurance coverage and the Medical Care Availability and Reduction of Error Fund (MCARE), all subject to certain limits and terms and conditions, but not including any self-insured retention.

**1.65.** **"Medical Malpractice Claim"** means a Claim against a Debtor for alleged personal injury or wrongful death on account of, or related to, alleged negligence or medical malpractice.

**1.66.** **"Non-Stipulated Medical Malpractice Claim"** means a Medical Malpractice Claim that is not a Stipulated Medical Malpractice Claim.

**1.67.** **"Non-Stipulated Medical Malpractice Claims Procedures"** means those procedures set forth on Exhibit "B" to the Plan.

**1.68.** **"Notice of Effective Date"** means the notice of entry of the occurrence of the Effective Date, to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims.

**1.69.** **"Objection Deadline"** means the deadline for filing objections to Claims as set forth in Section 11.2, as such deadline may from time to time be extended.

**1.70.** **"Other Secured Claim"** means a Secured Claim other than the Bond Trustee Secured Claim and the Bristol Township Secured Claim.

**1.71.** **"PBGC"** means the Pension Benefit Guaranty Corporation.

**1.72.** **"PBGC General Unsecured Claim"** means any Claim of the PBGC that is not a Priority Non-Tax Claim or an Administrative Claim.

**1.73.** **"PBGC Stipulation"** means that certain Settlement Agreement attached hereto as Exhibit "C".

**1.74.** **"Pension Plan"** shall mean the Lower Bucks Hospital Retirement Account Plan.

**1.75.** **"Person"** means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**1.76.** **"Petition Date"** means, with respect to any Debtor, the date on which the Chapter 11 Case of such Debtor was commenced.

**1.77.** **"Plan"** means this chapter 11 plan of reorganization, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

**1.78.** **"Plan Distribution"** means payment(s) or distribution(s) under the Plan to the holder of an Allowed Claim.

**1.79.** **"Plan Documents"** means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 2.4.

**1.80.** **"Plan Supplement"** means the compilation of Plan Documents or forms of documents specified in the Plan, including, without limitation, any exhibits or schedules to the Plan not included herewith, each in form and substance acceptable to the Debtors, which the Debtors shall, as provided in Section 2.4, file with the Bankruptcy Court on or before the date that is seven (7) days prior to the Confirmation Hearing, or at such later time as the Bankruptcy Court may allow, all of which are incorporated herein by reference.

**1.81.** **"Priority Non-Tax Claim"** means any Claim entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**1.82.** **"Priority Tax Claim"** means any Claim, whether secured or unsecured, entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.83.** **"Pro Rata Share"** means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a class or classes, as applicable, including Contested Claims, but excluding Disallowed Claims, and taking into account any Contested Claims Reserves (a) as calculated by the Disbursing Agent and/or (b) as determined or estimated by the Bankruptcy Court.

**1.84.** **"Professional"** means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to Sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in these Chapter 11 Cases.

**1.85.** **"RDA"** means The Redevelopment Authority of the County of Bucks.

1.86.   **"Rejection Damage Claim"** means any Claim arising out of the rejection of an executory contract or unexpired lease.

1.87.   **"Reorganized Lower Bucks Hospital"** means LBH from and after the Effective Date.

1.88.   **"Reorganized Debtors"** means collectively, from and after the Effective Date, the Debtors and any successors thereto by merger, consolidation or otherwise.

1.89.   **"Reserve Funds"** means the Debt Service Reserve Fund and the Debt Service Fund, as provided for and defined in the Indenture.

1.90.   **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by each of the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

1.91.   **"Section 503(b)(9) Claim"** means any Claim against any of the Debtors asserting administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code.

1.92.   **"Secured Claim"** means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the Estate's interest in the Asset(s) that secure(s) payment of the Claim, (b) a Claim against any Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code and (c) a Claim deemed or treated under the Plan as a Secured Claim.

1.93.   **"Stipulated Medical Malpractice Claim"** means (a) a Medical Malpractice Claim with respect to which the Person holding such Claim has agreed in writing to limit his/her recovery solely to Insurance Coverage or (b) with respect to which the Person holding such Claim has made the Stipulated Medical Malpractice Election.

1.94.   **"Stipulated Medical Malpractice Claim Election"** means the election of a Person holding a Medical Malpractice Claim to be treated as a Stipulated Medical Malpractice Claim. The Stipulated Medical Malpractice Election shall be made by submitting a properly completed and timely submitted Ballot indicating that the Stipulated Medical Malpractice Claim Election has been made.

1.95.   **"Table Gaming Grants"** shall have the meaning ascribed to it in Section 8.1.

1.96.   **"Termination Premiums"** shall have the meaning ascribed to it in Section 15.7.

1.97.   **"Uninsured Deficiency"** means that portion of an Allowed Class A8-B Claim that is not covered by available Malpractice Insurance Coverage, including any self-insured retention.

## ARTICLE 2.

## INTERPRETATION AND APPLICATION

### 2.1.    Interpretation.

Unless otherwise specified, all section, article, exhibit and schedule references in the Plan are to the respective section in, article of, or exhibit or schedule to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

### 2.2.    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code have the same meanings when used in the Plan, unless a different definition is set forth in Article I hereof. The rules of construction contained in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to the construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

### 2.3.    Other Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

### 2.4.    Incorporation of Plan Documents.

All appendices, exhibits and schedules to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be filed with the Bankruptcy Court as part of the Plan Supplement not less than seven (7) days prior to the commencement of the Confirmation Hearing, or at such later time as the Bankruptcy Court may allow, provided, however, that any Plan Documents that are or may be subject to confidentiality provisions or otherwise contain confidential or proprietary information may be filed in redacted form under seal.

Holders of Claims may obtain a copy of the Plan Documents (in redacted form, as applicable, and excluding any Plan Documents that are filed under seal), once filed, by a written request sent to the following address:

Lower Bucks Hospital, et al.
c/o Donlin, Recano & Company, Inc.
419 Park Avenue South
New York, NY 10016
(212) 481-1411 (phone)
(212) 481-1416 (facsimile)

## ARTICLE 3.

### CLASSIFICATION OF CLAIMS

Except as otherwise provided herein, for the purposes of organization, voting and all confirmation matters, all Claims against the Debtors will be classified as set forth in this Article III.

**3.1.    Administrative Expense Claims and Priority Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims will not be classified under the Plan, and will instead be treated separately as unclassified Claims on the terms set forth in Article VI.

**3.2.    Claims Against LBH.**

(a)    Class A1:  LBH Priority Non-Tax Claims

Class A1 consists of all Priority Non-Tax Claims against LBH.

(b)    Class A2:  Bristol Township Secured Claim

Class A2 consists of the Bristol Township Secured Claim.

(c)    Class A3:  Bond Trustee Secured Claim

Class A3 consists of the Bond Trustee Secured Claim.

(d)    Class A4:  LBH Other Secured Claims.

Class A4 consists of all Other Secured Claims against LBH.

(e)    Class A5:  PBGC General Unsecured Claim

Class A5 consists of the PBGC General Unsecured Claim against LBH.

(f)    Class A6:  Bond Trustee Unsecured Claim

Class A6 consists of the Bond Trustee Unsecured Claim.

(g)     Class A7:  LBH General Unsecured Claims

Class A7 consists of all General Unsecured Claims against LBH.

(h)     Class A8-A:  LBH Stipulated Medical Malpractice Claims

Class A8-A consists of all Stipulated Medical Malpractice Claims
against LBH.

(i)      Class A8-B:  LBH Non-Stipulated Medical Malpractice Claims

Class A8-B consists of all Non-Stipulated Medical Malpractice
Claims against LBH.

(j)      Class A9:  LBH Convenience Claims

Class A9 consists of all Convenience Claims against LBH.

**3.3.    Claims Against Enterprises.**

(a)     Class B1:  Enterprises Priority Non-Tax Claims

Class B1 consists of all Priority Non-Tax Claims against
Enterprises.

(b)     Class B4:  Enterprises Other Secured Claims

Class B4 consists of all Other Secured Claims against Enterprises.

(c)     Class B5:  PBGC General Unsecured Claim

Class B5 consists of the PBGC General Unsecured Claim against
Enterprises.

(d)     Class B7:  Enterprises General Unsecured Claims

Class B7 consists of all General Unsecured Claims against
Enterprises

(e)     Class B9:  Enterprises Convenience Claims

Class B9 consists of all Convenience Claims against Enterprises.

**3.4.    Claims Against APC.**

(a)     Class C1:  APC Priority Non-Tax Claims

Class C1 consists of all Priority Non-Tax Claims against APC.

(b)    Class C4:  APC Other Secured Claims

Class C4 consists of all Other Secured Claims against APC.

(c)    Class C5:  PBGC General Unsecured Claim

Class C5 consists of the PBGC General Unsecured Claim against APC.

(d)    Class C7:  APC General Unsecured Claims

Class C7 consists of all General Unsecured Claims against APC.

(e)    Class C9:  APC Convenience Claims

Class C9 consists of all Convenience Claims against APC.

## ARTICLE 4.

IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES OF CLAIMS

### 4.1.    Impaired and Unimpaired Classes of Claims.

Priority Non-Tax Claims and Other Secured Claims are not impaired under the Plan. All other classes of Claims are impaired under the Plan.

### 4.2.    Impairment Controversies.

If a dispute arises as to whether any Claim, or any class of Claims, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such dispute.

## ARTICLE 5.

PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN

The classes of Claims against, with respect to and to the extent applicable for, each Debtor shall be treated under the Plan as follows:

### 5.1.    Treatment of Claims Against LBH:

### 5.1.1.  Class A1 – LBH Priority Non-Tax Claims.

(A)    Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such LBH Priority Non-Tax Claim becomes an Allowed LBH Priority Non-Tax Claim, or (iii) the date on which such LBH Priority Non-Tax Claim becomes due and payable pursuant to any agreement between the Debtors and a holder of an LBH Priority Non-

Tax Claim, each holder of an Allowed LBH Priority Non-Tax Claim shall receive from the Disbursing Agent in full satisfaction, settlement, release and discharge of and in exchange for such Allowed LBH Priority Non-Tax Claim (a) Cash equal to the unpaid portion of such Allowed LBH Priority Non-Tax Claim or (b) such other treatment as the Debtors (or Reorganized Debtors) and such holder shall have agreed in writing. All Allowed LBH Priority Non-Tax Claims which are not by their terms due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

     (B)    Status

        LBH Priority Non-Tax Claims are Unimpaired. Holders of LBH Priority Non-Tax Claims shall be deemed to have accepted the Plan, and accordingly are not entitled to vote to accept or reject the Plan.

### 5.1.2. Class A2 – Bristol Township Secured Claim.

     (A)    The Allowed amount of the Bristol Township Secured Claim, plus interest thereon from the Petition Date at the judgment rate in effect in Pennsylvania, shall be paid by Reorganized Lower Bucks Hospital in Cash in four (4) equal quarterly installments, with the first installment payable on the three (3) month anniversary of the Effective Date and the subsequent installments payable at three (3) month intervals thereafter.

     (B)    Bristol Township shall retain its asserted lien(s), notwithstanding anything to the contrary contained herein, provided, however, that such lien(s) shall be deemed vacated and of no force or effect to the extent of a judicial determination, by Final Order, that the Bristol Township Secured Claim is unperfected and, provided further, that such lien(s) shall be divested upon full payment of the Allowed Class A2 Claim of Bristol Township. Upon full payment of its Allowed Class A2 Claim, Bristol Township shall make any filings required to remove its lien(s) as of record.

### 5.1.3. Class A3 – Bond Trustee Secured Claim.

     (A)    Pursuant to the Bond Trustee Settlement Agreement, and subject to Section 5.1.3(B) hereof:

        (i)    each holder of an Allowed Class A3 Claim shall, on or as soon as reasonably practical after the Effective Date, receive such holder's Pro Rata share of: (a) the Reserve Funds; and (b) $8,150,000.00 in full satisfaction, settlement, release and discharge of and in exchange for such holder's Allowed Claim;

        (ii)    the Bond Trustee Litigation shall on the Effective Date be deemed settled and dismissed with prejudice, and Reorganized LBH shall be deemed authorized and directed to file with the Clerk of the Bankruptcy Court, on behalf of all parties to the Bond Trustee Litigation, any notices and/or other pleadings necessary or desirable to reflect and/or effectuate such settlement and dismissal; and

        (iii)    upon the written request of Reorganized Lower Bucks Hospital, the Bond Trustee shall promptly make any filings required to removed its alleged lien(s) as of record.

(B)     All Distributions to holders of Allowed Class A3 Claims pursuant to this Section 5.1.3 shall be subject to Section 10.3 hereof including without limitation those provisions relating to the Bond Trustee's fees, costs and expenses payable from such Distributions pursuant to the Indenture or applicable law.

**5.1.4.  Class A4 – LBH Other Secured Claims.**

(A)     Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such LBH Other Secured Claim becomes an Allowed LBH Other Secured Claim or (iii) the date on which such LBH Other Secured Claim becomes due and payable pursuant to an agreement between LBH and the holder of an Allowed LBH Other Secured Claim, each holder of an Allowed LBH Other Secured Claim shall receive from Reorganized Lower Bucks Hospital in full satisfaction, settlement, release and discharge of and in exchange for such Allowed LBH Other Secured Claim, at the sole discretion of the Debtors, (a) Cash equal to the unpaid portion of such Allowed LBH Other Secured Claim, (b) reinstatement of the legal, equitable and contractual rights of the holder of such Allowed LBH Other Secured Claim, or (c) such other treatment as the Debtors (or Reorganized Debtors) and such holder shall have agreed in writing.  The Debtors' failure to object to any LBH Other Secured Claim in the Chapter 11 Cases shall be without prejudice to the rights of the Debtors or the Reorganized Debtors to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Claim.  Nothing in the Plan or elsewhere shall preclude the Debtors or Reorganized Debtors from challenging the validity of any alleged Encumbrance on any asset of a Debtor or the value of any collateral.

(B)     Status

LBH Other Secured Claims are unimpaired.   Holders of LBH Other Secured Claims shall be deemed to have accepted the Plan, and accordingly are not entitled to vote to accept or reject the Plan.

**5.1.5.  Class A5 – PBGC General Unsecured Claim**

(A)     PBGC Stipulation:  The PBGC Stipulation is incorporated herein and upon the occurrence of the Effective Date shall be deemed approved by the Bankruptcy Court.

(B)     Treatment: Consistent with the PBGC Stipulation, and subject to Section 15.7 hereof, the holder of the Class A5 PBGC General Unsecured Claim shall receive the following:

(i)     on the Effective Date or as soon thereafter as is reasonably practical, one-half of the Guaranteed Cash, from the Disbursing Agent;  and

(ii)     one-half of all payments due from the Creditor Note;

(iii)     the following payments, in Cash, from the indicated Entities:

(1)    Bucks County Insurance Company, Ltd: an amount to be agreed to by the parties;

(2)    Bucks County Health Foundation: an amount to be agreed to by the parties; and

(3)    Advanced Specialty Physicians Group: an amount to be agreed to by the parties.

(iv)    $1,000,000, to be paid by Reorganized Lower Bucks Hospital, from Cash on hand subsequent to the Effective Date, in four (4) equal quarterly installments, without interest, with the first payment to be made three (3) months after the Effective Date.

**5.1.6.**  Class A6 – Bond Trustee Unsecured Claim

(A)    Each holder of an Allowed Claim in Class A6 shall receive, subject to Section 5.1.6(B) hereof, the treatment described in Section 5.1.3(A) of this Plan in full satisfaction, settlement, release and discharge of and in exchange for such holder's Allowed Class A6 Claim.

(B)    All Distributions to holders of Allowed Class A6 Claims pursuant to this Section 5.1.6 shall be subject to Section 10.3 hereof including without limitation those provisions relating to the bond Trustee's fees, costs and expenses payable from such Distributions pursuant to the Indenture or applicable law.

**5.1.7.**  Class A7 – LBH General Unsecured Claims

Each holder of an Allowed LBH General Unsecured Claim shall, in full satisfaction of such holder's Allowed LBH General Unsecured Claim, receive from the Disbursing Agent:

(i)    on the Initial Distribution Date, a Pro Rata Share of one-half of the Guaranteed Cash, in accordance with that holder's Pro Rata Share of the aggregate of all Allowed General Unsecured Claims; and

(ii)    a Pro Rata Share of one-half of all payments due from the Creditor Note, in accordance with the holder's Pro Rata Share of the aggregate of all Allowed General Unsecured Claims.

**5.1.8.**  Class A8-A – LBH Stipulated Medical Malpractice Claims

Pursuant to orders of the Bankruptcy Court, each holder of a LBH Stipulated Medical Malpractice Claim has been, or upon the occurrence of the Effective Date shall be, granted relief from the automatic stay, to the extent applicable, to pursue litigation on account of its Class A8-A Claim against Reorganized Lower Bucks Hospital, or to prosecute litigation on account of its Class A8-A Claim that was pending against Lower Bucks Hospital on the Petition Date, with the result of such litigation to constitute the Allowance or Disallowance of the applicable Class A8-A Claim, provided that Reorganized Lower Bucks Hospital shall retain, and may in its sole discretion assert, any and all legal and equitable defenses and/or counterclaims of Lower Bucks Hospital against each holder of a Class A8-A Claim other than its receipt of a discharge pursuant

to this Plan, the Confirmation Order and/or Section 1141 of the Bankruptcy Code and, provided further, that each holder of an Allowed Class A8-A Claim shall recover, to the extent entitled under applicable law, solely from any available Malpractice Insurance Coverage. In no event shall Reorganized Lower Bucks Hospital be obligated to pay any amount to any holder of a Class A8-A Claim other than from Insurance Coverage. Each holder of a Class A8-A Claim shall be permanently enjoined from recovering or seeking to recover from Reorganized Lower Bucks Hospital, whether directly or indirectly, other than from any available Malpractice Insurance Coverage.

**5.1.9.**  Class A8-B – LBH Non-Stipulated Medical Malpractice Claims

Upon the Effective Date, but only after it has timely and fully complied with the Non-Stipulated Medical Malpractice Claims Procedures, each holder of a Class A8-B Claim shall receive relief from the automatic stay, to the extent applicable, to commence litigation on account of its Class A8-B Claim against Reorganized Lower Bucks Hospital, or to prosecute litigation on account of its Class A8-B Claim that was pending against Lower Bucks Hospital on the Petition Date, with the result of such litigation to constitute the Allowance or Disallowance of the applicable Class A8-B Claim; provided, that:

(i)  Reorganized Lower Bucks Hospital shall retain, and may in its sole discretion assert, any and all legal and equitable defenses and/or counterclaims of Lower Bucks Hospital against each holder of a Class A8-B Claim other than its receipt of a discharge pursuant to this Plan, the Confirmation Order and/or Section 1141 of the Bankruptcy Code; and

(ii)  holders of Allowed Class A8-B Claims shall recover, to the extent entitled under applicable law, if any:

(1)  first, from any available Malpractice Insurance Coverage; and

(2)  second, and solely to the extent of any Uninsured Deficiency, from Reorganized Lower Bucks Hospital, provided that in no event shall Reorganized Lower Bucks Hospital be obligated to pay any holder of an Allowed Class A8-B Claim, on account of any Uninsured Deficiency, more, on a percentage basis, than the percentage distribution provided to holders of Allowed Class A7 Claims under the Plan. Each holder of a Class A8-B Claim shall be permanently enjoined from recovering or seeking to recover from Reorganized Lower Bucks Hospital on account of any Uninsured Deficiency more than the percentage distribution provided to holders of Allowed Class A7 Claims under the Plan.

**5.1.10.**  Class A9 – LBH Convenience Class Claims

Each holder of an Allowed Class A9 Convenience Claim shall, on, or as soon as reasonably practical after, the Effective Date, in full satisfaction of such holder's Allowed Convenience Claim, receive from the Disbursing Agent a single Cash payment equal to 20% of its Allowed Convenience Claim.

**5.2.    Treatment of Claims Against Enterprises:**

**5.2.1.    Class B1 – Enterprises Priority Non-Tax Claims**

(A)    Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such Enterprises Priority Non-Tax Claim becomes an Allowed Enterprises Priority Non-Tax Claim, or (iii) the date on which such Enterprises Priority Non-Tax Claim becomes due and payable pursuant to any agreement between the Debtors and a holder of an Enterprises Priority Non-Tax Claim, each holder of an Allowed Enterprises Priority Non-Tax Claim shall receive from the Disbursing Agent in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Enterprises Priority Non-Tax Claim (a) Cash equal to the unpaid portion of such Allowed Enterprises Priority Non-Tax Claim or (b) such other treatment as the Debtors (or Reorganized Debtors) and such holder shall have agreed in writing. All Allowed Enterprises Priority Non-Tax Claims which are not by their terms due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(B)    Status

Enterprises Priority Non-Tax Claims are Unimpaired. Holders of Enterprises Priority Non-Tax Claims shall be deemed to have accepted the Plan, and accordingly are not entitled to vote to accept or reject the Plan.

**5.2.2.    Class B4 – Enterprises Other Secured Claims**

(A)    Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such Enterprises Other Secured Claim becomes an Allowed Enterprises Other Secured Claim or (iii) the date on which such Enterprises Other Secured Claim becomes due and payable pursuant to an agreement between Enterprises and the holder of an Allowed Enterprises Other Secured Claim, each holder of an Allowed Enterprises Other Secured Claim shall receive from Reorganized Enterprises in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Enterprises Other Secured Claim, at the sole discretion of the Debtors, (a) Cash equal to the unpaid portion of such Allowed Enterprises Other Secured Claim, (b) Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Enterprises Other Secured Claim, or (c) such other treatment as the Debtors (or Reorganized Debtors) and such holder shall have agreed in writing. The Debtors' failure to object to any Enterprises Other Secured Claim in the Chapter 11 Cases shall be without prejudice to the rights of the Debtors or the Reorganized Debtors to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Claim. Nothing in the Plan or elsewhere shall preclude the Debtors or Reorganized Debtors from challenging the validity of any alleged Encumbrance on any asset of a Debtor or the value of any collateral.

17

(B)      Status

Enterprises Other Secured Claims are Unimpaired.  Holders of Enterprises Other Secured Claims shall be deemed to have accepted the Plan, and accordingly are not entitled to vote to accept or reject the Plan.

### 5.2.3.  Class B5 – PBGC General Unsecured Claim

The holder of the Class B5 PBGC Unsecured Claim shall receive from the Disbursing Agent the following, consistent with the PBGC Stipulation, and subject to Section 15.7 hereof:

(i)      the treatment described in Section 5.1.5; and

(ii)      $2.0 million in Cash.

### 5.2.4.  Class B7 – Enterprises General Unsecured Claims

Each holder of an Allowed Enterprises General Unsecured Claim shall, in full satisfaction of such holder's Allowed Enterprises General Unsecured Claim, receive from the Disbursing Agent:

(i)      on the Initial Distribution Date, a Pro Rata Share of one-half of the Guaranteed Cash, in accordance with that holder's Pro Rata Share of the aggregate of all Allowed General Unsecured Claims; and

(ii)      a Pro Rata Share of one-half of all payments due from the Creditor Note, in accordance with the holder's Pro Rata Share of the aggregate of all Allowed General Unsecured Claims.

### 5.2.5.  Class B9 – Enterprises Convenience Class Claims

Each holder of an Allowed Class B9 Convenience Claim shall, on, or as soon as practical after, the Effective Date, in full satisfaction of such holder's Allowed Convenience Claim, receive from the Disbursing Agent a single Cash payment equal to 20% of its Allowed Convenience Claim.

### 5.3.    Treatment of Claims Against APC:

### 5.3.1.  Class C1 – APC Priority Non-Tax Claims

(A)      Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such APC Priority Non-Tax Claim becomes an Allowed APC Priority Non-Tax Claim, or (iii) the date on which such APC Priority Non-Tax Claim becomes due and payable pursuant to any agreement between the Debtors and a holder of an APC Priority Non-Tax Claim, each holder of an Allowed APC Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed APC Priority

Non-Tax Claim (a) Cash equal to the unpaid portion of such Allowed APC Priority Non-Tax Claim or (b) such other treatment as the Debtors (or Reorganized Debtors) and such holder shall have agreed in writing. All Allowed APC Priority Non-Tax Claims which are not by their terms due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(B)    Status

APC Priority Non-Tax Claims are Unimpaired. Holders of APC Priority Non-Tax Claims shall be deemed to have accepted the Plan, and accordingly are not entitled to vote to accept or reject the Plan.

### 5.3.2.  Class C4 – APC Other Secured Claims

(A)    Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such APC Other Secured Claim becomes an Allowed APC Other Secured Claim or (iii) the date on which such APC Other Secured Claim becomes due and payable pursuant to an agreement between APC and the holder of an Allowed APC Other Secured Claim, each holder of an Allowed APC Other Secured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed APC Other Secured Claim, at the sole discretion of the Debtors, (a) Cash equal to the unpaid portion of such Allowed APC Other Secured Claim, (b) Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed APC Other Secured Claim, or (c) such other treatment as the Debtors (or the Reorganized Debtors) and such holder shall have agreed in writing. The Debtors' failure to object to any APC Other Secured Claim in the Chapter 11 Cases shall be without prejudice to the rights of the Debtors or the Reorganized Debtors to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Claim. Nothing in the Plan or elsewhere shall preclude the Debtors or Reorganized Debtors from challenging the validity of any alleged Encumbrance on any asset of a Debtor or the value of any collateral.

(B)    Status

APC Other Secured Claims are Unimpaired. Holders of APC Other Secured Claims shall be deemed to have accepted the Plan, and accordingly are not entitled to vote to accept or reject the Plan.

### 5.3.3.  Class C5 – PBGC General Unsecured Claim

The holder of the Class C5 PBGC General Unsecured Claim shall receive the treatment described in Section 5.1.5 in full satisfaction, release and discharge of, and in exchange for, its Allowed Class C5 Claim.

### 5.3.4. Class C7 – APC General Unsecured Claims

Each holder of an Allowed APC General Unsecured Claim shall, in full satisfaction of such holder's Allowed APC General Unsecured Claim, receive from the Disbursing Agent:

(i)   on the Initial Distribution Date, a Pro Rata Share of one-half of the Guaranteed Cash, in accordance with that holder's Pro Rata Share of the aggregate of all Allowed General Unsecured Claims; and

(ii)   a Pro Rata Share of one-half of all payments due from the Creditor Note, in accordance with the holder's Pro Rata Share of the aggregate of all Allowed General Unsecured Claims.

### 5.3.5. Class C9 – APC Convenience Class Claims

Each holder of a Class C9 Allowed Convenience Claim shall, on or as soon as practical after, the Effective Date, in full satisfaction of such holder's Allowed Convenience Claim, receive a single Cash payment equal to 20% of its Allowed Convenience Claim.

## ARTICLE 6.

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

### 6.1.   Unclassified Claims.

Administrative Expense Claims and Priority Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Administrative Expense Claims and Priority Tax Claims are not designated as classes of Claims for the purposes of the Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

### 6.2.   Treatment of Administrative Expense Claims.

All Administrative Expense Claims shall be treated as follows:

(a)   Time for Filing Administrative Expense Claims.

The holder of an Administrative Expense Claim, other than (i) a Fee Claim, (ii) a liability incurred and payable after the Petition Date in the ordinary course of business by a Debtor, (iii) a Section 503(b)(9) Claim or (iv) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee and the U.S. Trustee, notice of such Administrative Expense Claim within thirty (30) days after service of Notice of Effective Date or such other specific date as may be established by the Bankruptcy Court. Such notice must include (a) the name of the Debtor(s) that are purported to be liable for the Claim, (b) the name of the holder of the Claim, (c) the amount of the Claim and (d) the basis of the Claim (including any documentation evidencing or supporting such Claim). THE FAILURE TO FILE A NOTICE OF AN ADMINISTRATIVE EXPENSE CLAIM ON OR BEFORE THE FOREGOING DEADLINE

AND THE FAILURE TO SERVE SUCH NOTICE TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.

(b)    Time for Filing Fee Claims.

Each Professional who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date or such other specific date as may be established by the Bankruptcy Court. THE FAILURE TO FILE TIMELY AND SERVE SUCH FEE APPLICATION SHALL RESULT IN THE FEE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED.

(c)    Time for Filing Section 503(b)(9) Claims.

Each holder of a Section 503(b)(9) Claim was required to file with the Claims Agent a proof of claim asserting Section 503(b)(9) priority prior to August 20, 2010. THE FAILURE TO HAVE FILED SUCH A CLAIM BY THE SECTION 503(B)(9) BAR DATE SHALL RESULT IN THE SECTION 503(B)(9) CLAIM BEING DEEMED DISALLOWED AS AN ADMINISTRATIVE EXPENSE CLAIM.

(d)    Allowance of Administrative Expense Claims, Fee Claims and Section 503(b)(9) Claims.

An Administrative Expense Claim (other than a Fee Claim or Section 503(b)(9) Claim) with respect to which notice has been properly filed and served pursuant to Section 6.2(a), or a Section 503(b)(9) Claim with respect to which a proof of claim has been properly filed before the Section 503(b)(9) Bar Date, shall become an Allowed Administrative Expense Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date or (ii) if applicable, the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 60-day period (or any extension thereof), the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.

(e)    Payment of Allowed Administrative Expense Claims.

On, or as soon as reasonably practical after, the latest of (a) the Effective Date, (b) the date on which an Administrative Expense Claim becomes Allowed or (c) the date on which such Administrative Expense Claim becomes due and payable pursuant to any agreement between the Debtors and the holder of the Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction of such Claims (i) the amount of such holder's Allowed Administrative Expense Claim in one Cash payment or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; provided that such treatment shall not provide a return to such holder having a present value as

of the Effective Date in excess of such holder's Allowed Administrative Expense Claim; provided further, that an Administrative Expense Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business.

**6.3.    Treatment of Priority Tax Claims.**

On, or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which a Priority Tax Claim becomes Allowed or (iii) the date on which such Priority Tax Claim becomes due and payable pursuant to any agreement between the Debtors and the holder of the Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction of such holder's Allowed Priority Tax Claim, (a) the amount of such holder's Allowed Priority Tax Claim in Cash, or (b) such other treatment as may be agreed upon in writing by such holder; provided that such agreed-upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim. The Confirmation Order shall enjoin any holder of an Allowed Priority Tax Claim from commencing or continuing any action or proceeding against any responsible person or officer of the Debtors that otherwise would be liable to such holder for payment of a Priority Tax Claim so long as the Debtors are in compliance with this Section 6.3. So long as the holder of an Allowed Priority Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person or officer under this Section 6.3 or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

## ARTICLE 7.

### ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**7.1.    Classes Entitled to Vote.**

Except for Classes A1, B1 and C1 (Priority Non-Tax Claims) and Classes A4, B4 and C4 (Other Secured Claims), all classes of Claims are entitled to vote on the Plan.

**7.2.    Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.

**7.3.    Tabulation of Votes on a Non-Consolidated Basis.**

The Balloting Agent will tabulate all votes on the Plan on a non-consolidated basis by class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code with respect to each Debtor.

**7.4.    Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a) of the Bankruptcy Code, except subsection (8) thereof, the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

**7.5.    Confirmation of All Cases.**

Except as provided in Section 15.15, and absent the Debtors' election otherwise, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors.

## ARTICLE 8.

MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1.    Effective Date and Initial Distribution Date Payments.**

Unless otherwise stated, the funds required to make the payments required under the Plan shall come from the following sources.

**8.1.1.** Sale / Leaseback of Hospital Facility

(1)    LBH shall, on the Effective Date, sell the Hospital Facility to the RDA for the net proceeds received from the sale of taxable, guaranteed bonds to be issued by the RDA in the gross aggregate principal amount of $14 million (the "2011 Bonds"). Immediately upon the occurrence of such sale, the RDA shall lease the Hospital Facility back to Reorganized Lower Bucks Hospital pursuant to the terms of the Hospital Facility Lease. The rental obligations of Reorganized Lower Bucks Hospital under the Hospital Facility Lease shall be equal to the debt service payments due with respect to the 2011 Bonds, provided that Reorganized Lower Bucks Hospital's rental obligations under the Hospital Facility Lease shall be payable solely from the grants, if any, payable by the County of Bucks to Reorganized Lower Bucks Hospital pursuant to that Pennsylvania statute codified at 4 Pa. Stat. Ann. § 13A02-04 (2010). Such grants are hereinafter referred to as "Table Gaming Grants".

(2)    The 2011 Debt Service Reserve Fund shall be established upon the issuance of the 2011 Bonds. The 2011 Debt Service Reserve Fund shall be funded, on the Effective Date, with sufficient funds to pay the first year of debt service on the 2011 Bonds, as follows: (i) all Table Gaming Grants accrued as of the Effective Date shall be paid by the County of Bucks into the 2011 Debt Service Reserve Fund; and (ii) to the extent, if any, that the Table Gaming Grants accrued as of the Effective Date are less than the first year of debt service on the 2011 Bonds, the gross proceeds of the sale of the 2011 Bonds shall be used to fund the 2011 Debt Service Reserve Fund. To the extent Table Gaming Grants payable after the Effective Date exceed the amounts required to pay Reorganized Lower Bucks Hospital's rental obligations under the Hospital Facility Lease, such excess shall be deposited into the 2011 Debt Service

23

Reserve Fund until the 2011 Debt Service Reserve Fund contains three years of debt service on the 2011 Bonds.

(3)    Upon satisfaction of the foregoing three year debt service requirement, any Table Gaming Grants in excess of the amount necessary to make lease payments under the Hospital Facility Lease shall be paid to Reorganized Lower Bucks Hospital. At the expiration of the Hospital Facility Lease, the RDA shall convey the Hospital Facility back to Reorganized Lower Bucks Hospital or its successors or assigns in accordance with, and subject to the terms and conditions of, the Hospital Facility Lease.

(4)    The 2011 Bonds shall be guaranteed by the County of Bucks on a full faith and credit basis.

### 8.1.2.  Cash Contribution.

On, or as soon as reasonably practical after, the Effective Date, Reorganized Lower Bucks Hospital shall pay $900,000 in Cash, from funds on hand, to the Disbursing Agent.

### 8.1.3.  Creditor Note.

Reorganized Lower Bucks Hospital will issue the Creditor Note as of the Effective Date.

### 8.1.4.  Mortgage Loan on Enterprise's Ambulatory Surgical Center.

As of the Effective Date, Enterprises shall obtain a $2.0 million mortgage loan, to be secured by a lien on Enterprises' ambulatory surgical center. On or about the Effective Date, Reorganized Lower Bucks Hospital shall enter into a lease agreement with Enterprises by which Reorganized Lower Bucks Hospital shall lease the ambulatory surgical center from Enterprises such that the rental payments with respect to such lease shall equal the amount payable with respect to the foregoing $2.0 million mortgage.

### 8.2.  [intentionally omitted]

### 8.3.  Operations Between the Confirmation Date and the Effective Date.

Through the Effective Date, the Debtors shall continue to operate their businesses as Debtors-in-Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

### 8.4.  Corporate Action.

(a)    The entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors, as the case may be, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further

approval, act or action under any applicable law, order, rule or regulation, including without limitation any action required by the officers or directors of the Debtors and the Reorganized Debtors, including, among other things, (i) the adoption or amendment of any organizational documents; (ii) all transfers of Assets that are to occur pursuant to the Plan; (iii) the incurrence of all obligations contemplated by the Plan, including without limitation those obligations contemplated by the Hospital Facility Lease, and the making of all Plan Distributions; (iv) the reinstatement and assumption of all indemnity obligations to the officers, directors and employees of the Debtors; (v) the implementation of all settlements and compromises as set forth in or contemplated by the Plan; and (vi) entering into any and all transactions, contracts or arrangements permitted by applicable law, order, rule or regulation.

(b)   All obligations of the Debtors to indemnify and hold harmless their current and former officers, directors and employees, whether arising under the Debtors' constituent documents, contract, law or equity, shall be fully reinstated and assumed by the Reorganized Debtors upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date, provided, however, that any such obligations shall be payable solely from Insurance Coverage, if any.  Nothing in the Plan shall release any obligations of the Debtors to indemnify and hold harmless their current and former officers, directors and employees provided, however, that any such obligations shall be payable solely from Insurance Coverage, if any.

**8.5.   Continued Corporate Existence.**

The Debtors shall continue to exist, as Reorganized Debtors, after the Effective Date as separate entities, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents, as may be modified by the Plan.

**8.6.   Re-vesting of Assets.**

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates and any property acquired by a Debtor or Reorganized Debtor under the Plan shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided herein.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

### 8.7.    Post-Confirmation Management.

As of the Effective Date, the officers and directors of each of the Reorganized Debtors shall be as set forth in the Plan Supplement. Thereafter, the officers and directors of the Reorganized Debtors shall be selected and determined in accordance with the provisions of the organizational documents of the Reorganized Debtors and applicable law.

### 8.8.    Limited Retention of Avoidance Actions.

All Avoidance Actions shall be preserved and vested in the applicable Reorganized Debtor solely for the purpose of seeking the disallowance of a Claim, but not for purposes of an affirmative recovery.

No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Avoidance Action against them as any indication that the applicable Reorganized Debtor will not assert such Avoidance Action against them for the purpose of seeking the disallowance of a Claim. All rights to assert any Avoidance Actions against any Person, except as otherwise provided in the Plan, are expressly preserved, and therefore no preclusion doctrine, including without limitation the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Avoidance Action upon or after the confirmation or consummation of the Plan.

Except as expressly set forth herein, nothing in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date.

## ARTICLE 9.

### THE DISBURSING AGENT

### 9.1.    Appointment of the Disbursing Agent.

Upon the occurrence of the Effective Date, the Disbursing Agent shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

### 9.2.    Powers and Duties.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims, (b) comply with the Plan and its obligations thereunder, (c) pending distribution pursuant to the Plan, hold in segregated trust accounts all funds the Disbursing Agent receives pursuant to the Plan; and (d) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court or required by the Bankruptcy Code or the Bankruptcy Rules. The Disbursing Agent shall be authorized and directed to rely upon the Debtors' and Claims Agent's books and

records and the Disbursing Agents and any representatives and professionals of the Disbursing Agent in determining Allowed Claims entitled to Distributions under the Plan.

On, or as soon as practicable after the Effective Date, the Reorganized Debtors shall turn over to the Disbursing agent all of the Cash realized pursuant to Sections 8.1.1, 8.1.2 and 8.1.3 of the Plan including the Cash contributions contemplated by such Sections. The Disbursing Agent shall establish separate accounts in the name of each of the Debtors with respect to such funds. All Cash held by the Disbursing Agent pursuant to the Plan shall be deposited or invested in accordance with Section 345 of the Bankruptcy Code, unless otherwise ordered by the Bankruptcy Court.

Reorganized Lower Bucks Hospital shall pay, from funds obtained subsequent to the Confirmation Date, all reasonable costs and expenses, including reasonable professional fees, of the Disbursing Agent in complying with the Disbursing Agent's obligations hereunder.

### 9.3.   Exculpation.

Except as otherwise provided in this Section 9.3, the Disbursing Agent, together with its officers, directors, employees, agents and representatives, are exculpated pursuant to the Plan by all Persons, Entities, holders of Claims and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim, or representative thereof, shall have or pursue any Cause of Action against the Disbursing Agent or its officers, directors, employees, agents and representatives for making Plan Distributions in accordance with the Plan. Nothing contained in this Section 9.3 shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Disbursing Agent to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.

### ARTICLE 10.

### DISTRIBUTION PROVISIONS

### 10.1.   Sources of Cash for Plan Distributions.

All Cash necessary for the Disbursing Agent to make payments and Plan Distributions shall be obtained from the Reorganized Debtors.

### 10.2.   Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent.

The Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state and local taxes. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Disbursing Agent may (a) treat the funds and other property held by it as held in a single trust for federal income tax purposes in

accordance with the trust provisions of the Internal Revenue Code (sections 641, et seq.) and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

### 10.3.   Plan Distributions.

Pursuant to the terms and provisions of the Plan, and except as stated otherwise in the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan.

Notwithstanding anything to the contrary set forth herein, and unless otherwise agreed by the Bond Trustee, all Distributions payable under the Plan to holders of Bonds shall be paid to the Bond Trustee, which shall distribute such Distributions (net of any Bond Trustee fees, costs and expenses payable from such Distributions under the Indenture or applicable law), or cause such Distributions (net of any Bond Trustee fees, costs and expenses payable from such Distributions under the Indenture or applicable law) to be distributed, to the holders of the Bonds in accordance with the terms of the Indenture. Distributions to holders of Bonds may be made by means of book-entry exchange through the facilities of the Depository Trust Corporation in accordance with the contrary practices of the Depository Trust Corporation, as and to the extent practicable. In connection with such book-entry exchange, the Bond Trustee may deliver instructions to the Depository Trust Corporation directing the Depository Trust Corporation to effect distributions (net of the Bond Trustee's fees and expenses as permitted under the Indenture) on a pro rata basis as provided under the Plan.

### 10.4.   Timing of Plan Distributions.

In the event a Plan Distribution is payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. A Plan Distribution shall be deemed to have been timely made if made on such date or within fourteen (14) days thereafter.

For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

### 10.5.   Address for Delivery of Plan Distributions/Unclaimed Distributions.

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not

provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to the applicable Reorganized Debtor.

**10.6.    Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to the applicable Reorganized Debtor.

**10.7.    Manner of Payment under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**10.8.    Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars are required to be made. At the Disbursing Agent's option, fractions of dollars may be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

**10.9.    Surrender and Cancellation of Instruments.**

As a condition to receiving any Plan Distribution, the holder of an Allowed Claim evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (a) surrender such certificate, instrument or note representing such Claim, and (b) execute and deliver such other documents as may be necessary to effectuate the Plan in the sole determination of the Disbursing Agent. Such certificate, instrument or note shall thereafter be cancelled and extinguished. The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (i) such certificates, instruments or notes are surrendered, or (ii) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments or notes, or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution. All property in respect of such forfeited Claims shall revert to the Reorganized Debtors, as applicable.

**10.10.   Record Date for Distributions.**

At the close of business on the Distribution Record Date, the transfer records for Claims shall be closed, and there shall be no further changes in the record holders of such Claims.  None of the Reorganized Debtors, the Claims Agent, the Disbursing Agent nor the Bond Trustee shall have any obligation to recognize any transfer of claims occurring after the Distribution Record Date, and they shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders as of the close of business on the Distribution Record Date.

**10.11.   Subsequent Distributions.**

The Disbursing Agent shall be authorized and directed to make subsequent Plan Distributions on account of such Claims which are either:  (a) Allowed Claims as of the Initial Distribution Date; or (b) Contested Claims as of the Initial Distribution Date but which subsequently become Allowed Claims pursuant to Article XI of this Plan. The Disbursing Agent shall make the subsequent Plan Distributions from time to time and in the exercise of its business judgment.  The Disbursing Agent's ability to make such subsequent Plan Distributions shall be based on the availability of additional assets of the Debtors' Estates and/or the disallowance of Contested Claims, as discussed in Article XI of this Plan.

**10.12.   De Minimus Distributions.**

The Disbursing Agent shall not have any obligation to make any distribution to any holder of an Allowed Claim if the amount to be distributed is less than $10.00.

**ARTICLE 11.**

PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

**11.1.   Prosecution of Contested Claims.**

After the date the Confirmation Order becomes a Final Order, only the Reorganized Debtors may object to the allowance of Claims.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 11.3.

**11.2.   Objection Deadline.**

As soon as practicable, but in no event later than one hundred and twenty (120) days after the Effective Date (subject to being extended as set forth herein or by order of the Bankruptcy Court upon motion of the Reorganized Debtors without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. The holder of a Claim subject to an objection will not receive a distribution on account of such Claim until such Claim is Allowed, provided, however, that the filing of a motion to extend the deadline to file objections to Claims shall automatically extend the claim objection deadline until a Final Order is entered or such motion. In the event that such motion to extend is denied, the claims objection deadline shall be the later

30

of the then-current claims objection deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's order denying the motion to extend the claims objection deadline.

### 11.3.  Claims Settlement.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Reorganized Debtors shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

### 11.4.  No Distribution Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is a Contested Claim, and/or is subject to a pending objection that has not been resolved by Final Order, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim that is not a Contested Claim, subject to the setoff rights preserved under the Plan.

### 11.5.  Entitlement to Plan Distributions Upon Allowance.

When a Contested Claim becomes an Allowed Claim, the holder of such Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

### 11.6.  Contested Claims Reserve.

The Disbursing Agent may establish one or more contested claims reserves ("Contested Claims Reserves") for the purpose of effectuating distributions to holders of Contested Claims, Claims subject to a pending objection and counterparties to executory contracts and/or unexpired leases that have been or may be rejected, pending the allowance or disallowance of such Claims in accordance with the Plan.

### 11.7.  Estimation of Claims.

An Estimation Order may be used to calculate and establish the amount of the Contested Claims Reserve. The Debtors and the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Contested Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Contested Claim, the amount so estimated shall constitute either (a) the Allowed amount of such Claim, (b) a maximum limitation on such Claim or (c) in the event such Claim is estimated in connection with the estimation of other Claims within the same class, a maximum limitation on the aggregate amount of Allowed Claims on account of such Contested Claims so estimated. If the estimated amount constitutes a maximum limitation on the amount of

such Claim, or on more than one such Claim within a class of Claims, as applicable, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claims. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

### 11.8.    No Recourse Against the Debtors, the Reorganized Debtors or Disbursing Agent.

If a Contested Claims Reserve is established pursuant to Section 11.6, any holder of a Contested Claim that ultimately becomes an Allowed Claim shall be entitled to receive its applicable distribution under the Plan solely from any Contested Claim Reserve established on account of such Contested Claims. In no event shall any holder of a Contested Claim have any recourse with respect to distributions made, or to be made, under the Plan to holders of such Claims, to any Debtor, any Reorganized Debtor or the Disbursing Agent on account of such Contested Claim, regardless of whether such Contested Claim shall ultimately become an Allowed Claim, and regardless of whether sufficient Cash or other property remains available for distribution in the Contested Claim Reserve established on account of such Contested Claims at the time such Claim becomes entitled to receive a distribution under the Plan.

### ARTICLE 12.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 12.1.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

(a)    All executory contracts and unexpired leases of the Debtors shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, unless another date is specified in the Plan, except: (i) any executory contracts and unexpired leases that are the subject of a motion to assume filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (ii) contracts and leases listed in Schedule 1 attached to the Disclosure Statement and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court; (iii) all executory contracts and unexpired leases assumed under the Plan or by order of the Bankruptcy Court entered before the Effective Date; and (iv) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code. Any order entered post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered pre-confirmation. The Debtors reserve the right to amend Disclosure Statement Schedule 1 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" prior to the entry of the Confirmation Order and subsequent to the entry of the Confirmation Order with respect to any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure

pursuant to Section 12.2 hereof and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time. Each executory contract and unexpired lease to be assumed or rejected by the Debtors shall include modifications, amendments, supplements, restatements, or other similar agreements made directly or indirectly by any agreement, instrument or other document that affects such executory contract or unexpired lease.

(b)    The inclusion of a contract, lease or other agreement on Disclosure Statement Schedule 1 or on any "Schedule of Assumed Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time barred from asserting Claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

(c)    The Plan shall constitute a motion to reject the executory contracts and unexpired leases rejected pursuant to this Section 12.1, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code, subject to the occurrence of the Effective Date, and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their Estates.

(d)    The Plan shall constitute a motion to assume all executory contracts and unexpired leases except those rejected pursuant to this Section 12.1. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to sections 365(a) and (b) of the Bankruptcy Code.

## 12.2.    Cure.

Any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable. Disclosure Statement Schedule 1 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" sets forth the Debtors' cure obligations for each agreement for which cure obligations must be satisfied as a condition to the assumption of such agreement. Any non-Debtor counterparty to an agreement listed on the Disclosure Statement Schedule 1 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation (or objects to the omission of a scheduled cure obligation) must file with the Bankruptcy Court, and serve upon the Debtors, a written objection to the cure obligation in the manner, and within such time period, as the Bankruptcy Court may

direct in the Confirmation Order. If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the Disclosure Statement Schedule 1 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtors.

### 12.3. Claims Arising from Rejected Contracts.

Rejection Damage Claims must be submitted to the Claims Agent, with copies to counsel for the Debtors, by the first Business Day that is at least thirty (30) days following the Effective Date. Properly submitted Rejection Damage Claims shall be treated as General Unsecured Claims or Convenience Claims, as applicable, subject to objection by the Reorganized Debtors. ANY REJECTION DAMAGE CLAIMS THAT ARE NOT PROPERLY SUBMITTED PURSUANT TO THIS SECTION 12.3 WILL FOREVER BE BARRED FROM ASSERTION AND SHALL NOT BE ENFORCEABLE AGAINST THE REORGANIZED DEBTORS, THEIR RESPECTIVE ESTATES, AFFILIATES OR ASSETS.

### ARTICLE 13.

### CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE

### 13.1. Conditions Precedent to Confirmation.

As conditions precedent to confirmation of the Plan, the Clerk of the Bankruptcy Court shall have entered an order or orders:

> (i)    approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;
>
> (ii)   authorizing the solicitation of votes with respect to the Plan; and
>
> (iii)  determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan.

### 13.2. Conditions Precedent to the Occurrence of the Effective Date.

Unless waived in writing by the Debtors, the following are conditions precedent to the occurrence of the Effective Date:

> (i)    the Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(ii)    any necessary regulatory consents, authorizations and approvals have been given;

(iii)    the 2011 Bonds shall have been issued in the aggregate principal amount of $14 million and the net proceeds thereof shall have been used by the RDA to purchase the Hospital Facility from LBH;

(iv)    LBH shall have leased back the Hospital Facility from the RDA pursuant to the Hospital Facility Lease;

(v)    a mortgage loan in the amount of approximately $2.0 million shall have been obtained and secured by Enterprises' real property; and

(vi)    the assets in the Pension Plan shall have been transferred to the PBGC in connection with a termination of the Pension Plan.

Notwithstanding anything to the contrary set forth herein, the actions set forth in subsections (iii), (iv) and (v) hereof may occur, and shall be deemed to occur, simultaneously with the occurrence of the Effective Date.

### 13.3.    Effect of Non-Occurrence of the Effective Date.

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against a Debtor; (b) prejudice in any manner the rights of any party in interest; or constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other party in interest.

## ARTICLE 14.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan or (c) that relates to the following:

(i)    To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article 12 hereof for the assumption or rejection of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)    To determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Disbursing Agent, the Reorganized Debtors, as applicable, after the Effective Date;

(iii)   To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)    To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)    To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)   To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Plan, the Plan Documents or their interpretation, implementation, enforcement or consummation;

(viii)  To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(ix)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates;

(x)     To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)    To hear and determine matters concerning state, local and federal taxes, fines, penalties, or additions to taxes for which the Reorganized Debtors, the Debtors-in-Possession, or the Disbursing

Agent may be liable, directly or indirectly, in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xii)   To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)  To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtors (including Avoidance Actions) commenced before or after the Effective Date;

(xiv)   To enter an order or final decree closing the Chapter 11 Cases;

(xv)    To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvi)   To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE 15.

### MISCELLANEOUS PROVISIONS

**15.1.  Subordination.**

The right of the Debtors to seek subordination of any lien, security interest, Claim pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes a subordinated at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated claim.

**15.2.  Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

**15.3.  Satisfaction of Claims.**

The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any accrued post-petition interest, against the Debtors and the Debtors-in-Possession, or any of their Estates, Assets, properties, or interests in property. Except as

otherwise expressly provided in the Plan, on the Effective Date, all Claims against the Debtors and the Debtors-in-Possession shall be satisfied, discharged and released in full. The Reorganized Debtors shall not be responsible for any pre-Effective Date obligations of the Debtors or the Debtors-in-Possession, except those expressly assumed by any Reorganized Debtor(s), as applicable. Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Reorganized Debtors, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

### 15.4.   Exculpation.

Neither the Debtors, the Committee nor their officers, directors, employees, agents, members and/or Professionals shall be liable for any Cause of Action related to or arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court. The Confirmation Order shall enjoin all holders of Claims and other parties from asserting or prosecuting any Cause of Action against the Debtors, the Committee and/or their officers, directors, employees, agents, members and Professionals as to which such Person has been exculpated from liability pursuant to the preceding sentence.

### 15.5.   Discharge of Liabilities.

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims shall be precluded from asserting against the Reorganized Debtors, the Debtors, the Estates, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE REORGANIZED DEBTORS SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE, OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE REORGANIZED DEBTORS.

### 15.6.    Discharge of Debtors.

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, without limitation, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors or property of the Debtors or their Estates to the extent it relates to a discharged Claim.

Notwithstanding anything in the foregoing to the contrary, and further nothing in the Debtors' Chapter 11 Cases, Confirmation Order, Plan, Disclosure Statement, the Bankruptcy Code (and section 1141 thereof), or any other document filed by the Debtors in the Chapter 11 Cases shall in any way be construed to discharge, release, limit, or relieve the Debtors, the Reorganized Debtors, or any other party, in any capacity, from any fiduciary liability or fiduciary responsibility with respect to the Pension Plan.

### 15.7.    PBGC Stipulation

Pursuant to the PBGC Stipulation, upon the occurrence of the Effective Date, the PBGC releases and discharges each of the Debtors, Advanced Specialty Physicians, Bucks County Health Foundation and Bucks County Insurance Company, Ltd. from (i) any and all claims of the PBGC, including but not limited to the PBGC Claims, relating to the Pension Plan, whether now existing or existing in the future; and (ii) any and all liabilities, including without limitation premiums, that are no owed, or that may become owed in the future, relating to the termination of the Pension Plan under 29 U.S.C. § 1306, including without limitation 29 U.S.C. § 1306(a)(7)(A) and (B) ("Termination Premiums").

### 15.8.    Notices.

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Lower Bucks Hospital
Advanced Primary Care Physicians
Lower Bucks Health Enterprises, Inc.
Attn: Albert Mezzaroba, President and Chief Executive Officer
501 Bath Road
Bristol, PA  19007
Telephone: (215) 785-9202
Facsimile: (215) 785-9175

and

Saul Ewing LLP
Attn: Jeffrey C. Hampton, Esquire
        Adam H. Isenberg, Esquire
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
Telephone: (215) 972-7777
Facsimile: (212) 972-7725

### 15.9.  Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

### 15.10.  Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the Commonwealth of Pennsylvania, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

### 15.11.  Exemption from Transfer Taxes.

Pursuant to Section 1146 of the Bankruptcy Code, any transfers in the United States from a Debtor to a Reorganized Debtor or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment.  The appropriate state or local government officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  For avoidance of any doubt, the transfer of the Hospital Facility to the RDA pursuant to the Plan, and the transfer of the Hospital Facility from the RDA back to Reorganized Lower Bucks Hospital pursuant to the terms of the Hospital Facility Lease, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment.

### 15.12. Notice of Entry of Confirmation Order and Relevant Dates.

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

### 15.13. Interest and Attorneys' Fees.

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.

Except as set forth in the Plan or as ordered by the Bankruptcy Court, no award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

### 15.14. Modification of the Plan.

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Debtors may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

### 15.15. Revocation of Plan.

The Debtors reserve the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing with respect to any one or more of the Debtors prior to the occurrence of the Effective Date. If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against in such Debtor or to prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor.

In the event that the Debtors choose to adjourn the Confirmation Hearing with respect to any one or more of the Debtors, the Debtors reserve the right to proceed with confirmation of the Plan with respect to those Debtors in relation to which the Confirmation Hearing has not been adjourned. With respect to those Debtors with respect to which the Confirmation Hearing has been adjourned, the Debtors reserve the right to amend, modify,

revoke, or withdraw the Plan and/or to submit any new plan of reorganization at such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

### 15.16. Setoff Rights.

In the event that any Debtor has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder, subject to section 553 of the Bankruptcy Code. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that any Debtor may have against the holder of any Claim.

### 15.17. Compliance with Tax Requirements.

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit upon it, including income, withholding and other tax obligations, on account of such Plan Distribution, and no holder of an Allowed Claim shall have responsibility for the satisfaction and payment of any tax obligations imposed by any government unit upon any other holder of an Allowed Claim. The Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

### 15.18. Rates.

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

### 15.19. Injunctions.

On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against one or more of the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Reorganized Debtors, the Estates, the Assets or the Disbursing Agent or their respective assets and property, with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan):

> (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(ii)    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

(iii)   creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(iv)    asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 15.16.

### 15.20. Binding Effect.

The Plan shall be binding upon the Reorganized Debtors, the holders of all Claims, all parties in interest and all Persons and Entities, and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

### 15.21. Severability.

In the event the Bankruptcy Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim or transaction, the Debtors may modify the Plan in accordance with Section 15.14 so that such provision shall not be applicable to the holder of any such Claim or transaction. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

### 15.22. Intercompany Claims

Upon the Effective Date, each of the Debtors shall be deemed to have waived and released any Claims against any other Debtor.

### 15.23. No Admissions.

As to contested matters, adversary proceedings, and other Causes of Action or threatened Causes of Actions, the Plan shall not constitute or be construed as an admission of any fact or liability, stipulation or waiver, but rather as a statement made in settlement negotiations. The Plan shall not be admissible in any non-bankruptcy proceeding nor shall it be construed to be conclusive advice on the tax, securities and other legal effects of the Plan as to holders of Claims against the Debtors or their affiliates, as Debtors and Debtors-in-Possession in these Chapter 11 Cases.

### 15.24. Dissolution of the Committee.

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities

in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee, and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

**15.25. Successors and Assigns.**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, trustee or assign of such Person.

**15.26. Corrective Action.**

The Debtors, the Reorganized Debtors and the Disbursing Agent shall be authorized to take such actions as necessary and appropriate to carry out the Plan, including the correction of mistakes or other inadvertent action. In making distributions or transfers under the Plan, the Debtors, Reorganized Debtors and/or Disbursing Agent, as applicable, may seek return of transfers to the extent of any errors, notwithstanding that the transfer is otherwise irrevocable under the Plan.

Dated: July 8, 2011                                    Respectfully submitted,

                                                       Lower Bucks Hospital
                                                       Lower Bucks Health Enterprises, Inc.
                                                       Advanced Primary Care Physicians

45

List of Exhibits


Exhibit "A" – Creditor Note

Exhibit "B" –  Non-Stipulated Medical Malpractice Claims Procedures

Exhibit "C" – PBGC Stipulation